John E. MacDonald, Esq. (Attorney ID 011511995)
**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**
3120 Princeton Pike, Suite 301
Lawrenceville, NJ 08648
(609) 357-1183 (tel); (609) 844-1102 (fax)
*jmadconald@constangy.com*
*Attorneys for Defendants Restoration of America, Inc.*
*and Voter Reference Foundation LLC*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons,* JANE DOE-1, *a law enforcement officer,* JANE DOE-2, *a law enforcement officer,* EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, and WILLIAM SULLIVAN, | (Electronically Filed) |
| Plaintiffs, | CIVIL ACTION |
| v. | Civil Action No. 1:24-cv-4324 |
| RESTORATION OF AMERICA, VOTER REFERENCE FOUNDATION LLC, RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities,* | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii

I. Introduction ........ 1

II. Additional Background ........ 2

III. The NVRA Preempts Daniel's Law as Applied to ROA and VRF ........ 4

IV. Daniel's Law Is Too Restrictive of Truthful, Political Speech ........ 6

A. VRF and ROA Provide Truthful Information of Public Concern ........ 6

B. Daniel's Law is Not the Least Restrictive Means Available ........ 8

CONCLUSION ........ 10

# TABLE OF AUTHORITIES

## Cases

*Arizona Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721 (2011) ....................2, 6

*Bowley v. City of Uniontown Police Dept*., 404 F. 3d 783 (3d Cir. 2005) ................6

*Brayshaw v. City of Tallahassee, Fla.*, 709 F. Supp. 2d 1244 (N.D. FL 2010) ........7

*Brown v. Entrm't Merch. Ass'n*, 564 U.S. 786 (2011) ....................10

*Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256 (3d Cir. 2006) ....................2

*Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010)....................1, 6

*Dublirer v. 2000 Linwood Ave. Owners, Inc.*, 220 N.J. 71, 103 A.3d 249 (2014) ....................6

*Fed. Election Comm'n v. Ted Cruz for Senate*, 596 U.S. 289 (2022) ....................2

*First Nat'l. Bank of Bos. v. Bellotti*, 435 U.S. 765 (1978)....................1

*Kratovil v. City of New Brunswick*, No. A-0216-23, 2024 WL 1826867, at *5 (N.J. Super. Ct. App. Div. Apr. 26, 2024) .................... 1, 7, 8

*Mazo v. New Jersey Sec'y of State*, 54 F.4th 124 (3d Cir. 2022) ....................1

*McCullen v. Coakley*, 573 U.S. 464 (2014) ....................2

*McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185 (2014) ....................6

*Mills v. State of Alabama*, 384 U.S. 214 (1966) ....................2

*Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36 (1st Cir. 2024) ....................4, 5

*Publius v. Boyer-Vine*, 237 F. Supp. 3d 997 (E.D. Cal. 2017) ....................7

*Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819 (1995)..........7

*Rutgers Univ. Student Assembly v. Middlesex Cnty. Bd. of Elections*, 438 N.J. Super. 93 (App. Div. 2014) ("*RUSA I*").................... 3, 8, 10

*Rutgers Univ. Student Assembly v. Middlesex Cnty. Bd. of Elections*, 446 N.J. Super. 221 (App. Div. 2016) ("*RUSA II*") ....................3

*Sheehan v. Gregoire*, 272 F. Supp. 2d 1135 (W.D. WA 2003)....................7

*Snyder v. Phelps*, 562 U.S. 443 (2011)....................7

*The Fla. Star v. B.J.F.*, 491 U.S. 524 (1989)....................8

*United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803 (2000)....................9

*Victory Processing, LLC v. Fox*, 937 F.3d 1218 (9th Cir. 2019) ....................10

*Voter Reference Foundation, LLC v. Torrez*, No. CIV 22-0222 JB/KK, 2024 WL 1347204 (D.N.M. Mar. 29, 2024)....................4

**Statutes and Other Authorities**

28 U.S.C. Pt. III, § 5933 ....................9

28 U.S.C. Pt. III, §5934 (f)(1) - (3)....................9

52 U.S.C. § 20501, *et. seq*....................1, 4

CONG US S 2340, Sec. 4(d)(1)(B)(ii)(I).................... 9

N.J.S.A. 19:31-31....................3, 8

N.J.S.A. 19:31-31(b)(1) ....................3

N.J.S.A. 19:31-31(c)(1)....................4

N.J.S.A. 2C:20-31.1(a) ....................9, 10

N.J.S.A. 47:1A-1....................4

N.J.S.A. 47:1B-1(a)....................9

N.J.S.A. 47:1B-2 ....................10

N.J.S.A. 47:1B-3(a)-(b)....................10

N.J.S.A. 56:8-166.1(b) ....................9

N.J.S.A. 56:8-166.1(d) ....................9, 10

## I. <u>Introduction</u>

Restoration of America and Voter Reference Foundation[1] are unique Defendants—non-profit entities that exist solely to engage in political speech. VRF lawfully obtains and publishes publicly available voter records, which is permitted and protected by the National Voter Registration Act, 52 U.S.C. § 20501, *et. seq*. ("NVRA") and the First Amendment. As political speech, it "must prevail against laws that would suppress it, whether by design or inadvertence." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010). VRF's political speech sits at the First Amendment's core, as "[n]owhere are the First Amendment rights of free speech and association more essential, or more fiercely guarded, than in the context of free and open elections." *Mazo v. New Jersey Sec'y of State*, 54 F.4th 124, 131 (3d Cir. 2022).

The death of Daniel Anderl was a tragedy. And, while protecting public officials is a compelling State interest, so too is "[p]reserving the integrity of the electoral process, preventing corruption, and sustaining the active, alert responsibility of the individual citizen in a democracy for the wise conduct of government are interests of the highest importance."[2] And "[w]hatever differences

[1] Restoration of America, Inc. ("ROA") is a 501(c)(4), nonprofit, social welfare entity. (Dkt. No. 1-1, Ex. A; Compl, ¶¶ 37,39). Voter Reference Foundation, LLC ("VRF") is a subsidiary of ROA and operates the website at issue in the Complaint: voterref.com ("Website"). (Compl. ¶¶37, 40).

[2] *First Nat. Bank of Bos. v. Bellotti*, 435 U.S. 765, 788–89 (1978) (cleaned up); *Kratovil v. City of New Brunswick*, No. A-0216-23, 2024 WL 1826867, at *5 (N.J. Super. Ct. App. Div. Apr. 26, 2024).

may exist about interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs." *Mills v. Alabama*, 384 U.S. 214, 218 (1966). Accordingly, "[l]aws that burden political speech" are subject to strict scrutiny and the Government must prove that the restriction "furthers a compelling interest and is narrowly tailored to achieve that interest" in the "least restrictive means" available. *Arizona Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011); *McCullen v. Coakley*, 573 U.S. 464, 478 (2014). When asked to draw the line, "[t]he First Amendment requires us to err on the side of protecting political speech rather than suppressing it." *Fed. Election Comm'n v. Ted Cruz for Senate*, 596 U.S. 289, 308 (2022) (cleaned up).

## II. Additional Background

VRF makes certain voter information derived from public sources available on the Website. (Compl. ¶¶37, 40).[3] VRF does so to ensure "transparent, accurate and fair elections in the United States of America" and "provide public access to official government data pertaining to elections, including voter registration rolls, with a goal of encouraging greater voter participation in all fifty states."[4] "The

[3] VRF does not publish voters' telephone numbers.

[4] *See* https://voterref.com/about *See also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim …."). While this litigation pends, information about New Jersey voters has been taken down from the Website. See generally https://voterref.com; *See also*, Request for Judicial Notice, Exs. A-E

information on [VRF's Website], including records of this voter's voting history, was provided to [VRF] by the New Jersey Division of Elections ("DOE") on November 10, 2022." (Compl. ¶¶37, 40).[5]

The DOE implemented a Statewide Voter Registration System ("SVRS") which is "the official State repository for voter registration information for every legally registered voter in this State, and ... the official voter registration system for the conduct of all elections in the State." *Rutgers Univ. Student Assembly v. Middlesex Cnty. Bd. of Elections*, 446 N.J. Super. 221, 236–37 (App. Div. 2016) ("*RUSA II*"); N.J.S.A. 19:31-31. The SVRS' purpose is to "advance[] the State's interest in preventing voter fraud and ensuring public confidence in the integrity of the electoral process". *Rutgers Univ. Student Assembly v. Middlesex Cnty. Bd. of Elections v. Middlesex Cnty. Bd. of Elections*, 438 N.J. Super. 93, 104–05 (App. Div. 2014) ("*RUSA I*").

By legislative *fiat*, the SVRS is required to "include, but not be limited to" the "name and registration information of every legally registered voter in the State." N.J.S.A. 19:31-31(b)(1). As to each legally registered voter, the SVRS must also include, but not be limited to, maintaining: "(1) last, first and middle name; (2) street address at time of registration or rural route, box number or apartment number, if

[5] VRF's Website also encouraged voters who believed that their information should not be appearing to contact the DOE and that VRF would remove voters who confirmed their status. (*Id.*).

any; (3) city or municipality, and zip code; (4) date of birth; (5) telephone number and e-mail address, if provided on voter registration form." N.J.S.A. 19:31-31(c)(1). Under New Jersey's Open Record Act "[a]ll records shall be subject to public access unless exempt…") and home addresses are not excluded or exempt. *See* N.J.S.A. 47:1A-1 (exempting "social security number, credit card number, unlisted telephone number or driver license number of any person" under certain circumstances). The takeaway is that New Jersey agrees in certain contexts, home addresses are matters of public concern.

## III. The NVRA Preempts Daniel's Law as Applied to ROA and VRF

The NVRA seeks "to protect the integrity of the electoral process" and "to ensure that accurate and current voter registration rolls are maintained".[6] Section 20507(i) explicitly requires the public disclosure of all records concerning the implementation of state programs and activities for ensuring the accuracy and currency of voter lists, including the lists themselves. *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36 (1st Cir. 2024); *see also Voter Reference Foundation, LLC v. Torrez*, No. CIV 22-0222 JB/KK, 2024 WL 1347204 (D.N.M. Mar. 29, 2024). NVRA "Section 8(i)(1) requires the public release of [voter records] by mandating 'all records concerning the implementation of' [a state's] voter list registration and maintenance activities to be 'ma[d]e available for *public inspection*.'" *Bellows* at 92

[6] 52 U.S.C. § 20501(b)(3)–(4).

F.4th, 54 (First Circuit's emphasis). "Such a provision evinces Congress's belief that public inspection, and thus public release, of Voter File data is necessary to accomplish the objectives behind the NVRA." *Id.*

"[T]he analysis and subsequent dissemination of Voter File data to the public is necessary if members of the public, or organizations such as [VRF], are ever to identify, address, and fix irregularities in states' voter rolls by exercising their private right of action under the NVRA." *Id.* The First Circuit recognized the "privacy concerns implicated by the public release of the Voter File" but observed that it is the province of Congress, not courts, "to strike the proper balance between transparency and voter privacy." *Id.* at 55 (citation omitted). *Bellows* recognized that Congress already determined "that without the transparency afforded by public disclosure, public confidence in the essential workings of democracy will suffer" and so it is not for the courts "to revisit the careful balance struck by Congress in weighing the privacy risks posed by public disclosure against the interests favoring the same." *Id.* (cleaned up). This restrictive version of Daniel's Law "erect[s] an impenetrable barrier for those seeking to use the Voter File to evaluate and enforce compliance with the NVRA nationwide." *Id.* at 54. As such, the Court should hold the NVRA preempts Daniel's Law, as applied to ROA and VRF.

## IV. Daniel's Law Is Too Restrictive of Truthful, Political Speech

"Speech is an essential mechanism of democracy, for it is the means to hold officials accountable to the people" and, political speech lies at the heart of the First Amendment. *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 339 (2010); *Arizona Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721 (2011) ("The First Amendment's core purpose is to foster a healthy, vibrant political system full of robust discussion and debate.").[7] A law that restricts political speech and fails to "avoid unnecessary abridgement" of First Amendment rights, "cannot survive 'rigorous' review.'" *McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 199 (2014). Speech that is true is also constitutionally protected. *Bowley v. City of Uniontown Police Dept.*, 404 F. 3d 783, 786 (3d Cir. 2005).[8]

### A. *VRF and ROA Provide Truthful Information of Public Concern*

Plaintiffs concede ROA and VRF disclose only true information that is publicly available on other governmental websites and they do not allege the phone numbers and addresses were obtained unlawfully. *See generally* Compl. The truthfulness of this information is what Plaintiffs take issue with, even though it

---

[7] *See Id.* at 757 (Kagan, J., *dissenting on other grounds*). Similarly, in New Jersey, "[p]olitical speech ... lies at the core of our State's constitutional free speech protections" and "occupies a preferred position in our constitutionally-protected interests." *Dublirer v. 2000 Linwood Ave. Owners, Inc.*, 220 N.J. 71, 85–86 (App. Div. 2014) (internal marks and citations omitted).

[8] For this reason, ROA and VRF join and adopt the arguments advanced in *Atlas v. Whitepages* (No. 24-3998) and *Atlas v. HIYA* (No. 24-4000) regarding the First Amendment protection for truthful speech.

derives from public records. *See* (Compl. ¶¶ 40,50). Because the DOE created the SVRS and requires the very information from New Jersey voters that VRF and ROA obtained, New Jersey "has opened a limited forum" and "must respect the lawful boundaries it has itself set." *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995). This is especially true for speech that can "be fairly considered as relating to any matter of political, social, or other concern to the community …" which is "a subject of general interest and of value and concern to the public." *Snyder v. Phelps*, 562 U.S. 443, 453 (2011).

Federal courts regularly find the home addresses of officials and police officers, when taken in tandem with political speech, "takes on a new meaning" as a matter of public concern and First Amendment protection is "at its Zenith." *See Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1014 (E.D. Cal. 2017) (public officials' address information a "matter of public concern"); *Brayshaw v. City of Tallahassee, Fla.*, 709 F. Supp. 2d at 1248 (publication of truthful personal information about police officers "is linked to the issue of police accountability through […] peaceful and lawful forms of civic involvement that publicize the issue"); *Sheehan v. Gregoire*, 272 F. Supp. 2d 1135, 1145 ("personal identifying information" related to "police accountability" is a "matter of public significance"). That said, though the *Kratovil* court found that a full street address was not a matter of public concern, it did so in a distinguishable context—a news story criticizing how far away a public

official lived from the town in which he worked— and where journalist could make his point without a full address. *Kratovil*, 2024 WL 1826867, at *3, 6. *Here*, a full address is necessary to verify voter records, which is why New Jersey makes them publicly available. *See RUSA I*, 438 N.J. Super. at 104–05; N.J.S.A. 19:31-31.

The Supreme Court has instructed that "timidity and self-censorship" which can result from publication of truthful information is a commanding principle when protecting free speech. *See The Fla. Star v. B.J.F.*, 491 U.S. 524, 535–36 (1989). In striking down a Florida law that prohibited publication of a rape-victim's name, the Court explained that the fear of self-suppression was great "even where the newspaper's sole object was to reproduce, with no substantial change, the government's rendition of the event in question" from public police report it had lawfully obtained. *See Id*. at 536–37. Here, Plaintiffs allege that VRF lawfully obtained information from the state, but that having done so and publishing it with no change from its public source, it should be punished under Daniel's law. *But See Id*. at 535 ("[W]here the government has made certain information publicly available, it is highly anomalous to sanction persons other than the source of its release.") *Id.* at 535.

### *B. Daniel's Law is Not the Least Restrictive Means Available*

A simple way to illustrate just how much restriction Daniel's Law creates involves comparing it to its Federal analog, the Daniel Anderl Security and Privacy

Act (“DASPA”). *See generally* 28 U.S.C. Pt. III, § 5931 *et. seq.* For instance, the definition of “covered persons” is much larger under Daniel’s law (without an articulated state interest), than in the DASPA. *Compare* N.J.S.A. 2C:20-31.1(a), N.J.S.A. 47:1B-1(a), N.J.S.A. 56:8-166.1(d) (judicial officers, law enforcement officers, CPS investigators) *with* 28 U.S.C. Pt. III, § 5933 (federal judges, senior, recalled, or retired federal judges and their immediate families). While Daniel’s Law provides Plaintiffs and “assignees” a private right of action for money damages, the DASPA limits initial relief to an injunction. *Compare* N.J.S.A. 56:8-166.1(b) *with* 28 U.S.C. Pt. III, §5934 (f)(1)-(3) (injunction in the first instance; fines for later violation). Daniel’s Law contains *no exceptions* for matters of public concern, while the DASPA exempts information that is “relevant to and displayed as part of a news story, commentary, editorial, or other speech on a matter of public concern.” CONG US S 2340, Sec. 4(d)(1)(B)(ii)(I). [9]

When, as here, “plausible, less restrictive alternative[s] [are] offered to a content-based restriction, it is the Government’s obligation to prove that the alternative [would] be ineffective to achieve its goals.” *United States v. Playboy Entm’t Grp., Inc.*, 529 U.S. 803, 816 (2000).[10] This is further established by Daniel’s

[9] The DASPA may face challenges of its own but is far less restrictive than Daniels Law.

[10] To date, New Jersey has not met that burden and has never explained why, in a series of amendments, it made the law consistently broader and harsher, and abandoned seemingly sufficient, less speech-chilling alternatives.

law seeking to punish private litigants for conduct it condones from the State. ROA and VRF engage in speech that New Jersey has determined "advance[s] the State's interest in preventing voter fraud and ensuring public confidence in the integrity of the electoral process" *RUSA I*, 438 N.J. Super. at 104–05.

Daniel's Law attempts to carve out an exception for the SVRS list and the redaction requirements of Daniels Law to favor election challengers and "vendors" or "contractors" or "organizations carrying out a function of the State concerning the administration or conduct of elections," effectively exempting public agencies from criminal and civil penalties. *See* N.J.S.A. §§ 47:1B-2; 47:1B-3(a)-(b); 2C:20-31.1(a); 56:8-166.1(d)). Making addresses and phone numbers of "covered persons" widely available via to public agencies without risk to them of adverse action under Daniel's Law raises under-inclusiveness, which is "a First Amendment concern when the State regulates one aspect of a problem while declining to regulate a different aspect of the problem that affects its stated interest in a *comparable way*." *Victory Processing, LLC v. Fox*, 937 F.3d 1218, 1228 (9th Cir. 2019) (emphasis in original). Treating the State more favorably than any Defendant in any of these cases is constitutionally unsound. *Brown v. Ent Merch's Ass'n*, 564 U.S. 786, 802 (2011).

**CONCLUSION**

Defendants request their Motion to Dismiss be granted on all claims.

Dated: June 14, 2024 Respectfully submitted,

CONSTANGY, BROOKS, SMITH & PROPHETE LLP

By: *__/s/ John E. MacDonald_____________*
John E. MacDonald (Attorney ID 011511995)
3120 Princeton Pike, Suite 301
Lawrenceville, NJ 08648
jmacdonald@constangy.com
(609) 357-1183 (tel); (609) 844-1102 (fax)
*Attorneys for Defendants Restoration of America, Inc. and Voter Reference Foundation*