## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, JANE DOE-1, *a law enforcement officer*, JANE DOE-2, *a law enforcement officer,* EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, and WILLIAM SULLIVAN, <br><br> Plaintiffs, <br><br> v. <br><br> RESTORATION OF AMERICA, VOTER REFERENCE FOUNDATION LLC, RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*, <br><br> Defendants. | **CIVIL ACTION** <br><br> **Case No.: 1:24-cv-04324-HB** |

---

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

---

i

*Attorneys for Plaintiffs*

Rajiv D. Parikh
Kathleen Barnett Einhorn
Jessica A. Merejo
**PEM LAW LLP**
1 Boland Dr., Suite 101
West Orange, New Jersey 07052
Telephone: (973) 577-5500
rparikh@pemlawfirm.com

Adam Shaw
**BOIES SCHILLER FLEXNER LLP**
30 South Pearl Street, 12th Floor
Albany, New York 12207
Telephone: (518) 694-4227
ashaw@bsfllp.com

Ryan J. McGee
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
rmcgee@forthepeople.com

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................... ii

INTRODUCTION ...................................................................................1

BACKGROUND ....................................................................................2

   Passage of Daniel's Law in New Jersey....................................................2

   Operation of Daniel's Law ...................................................................3

   The NVRA ......................................................................................5

LEGAL STANDARD..............................................................................5

   I.   THE NVRA DOES NOT PREEMPT DANIEL'S LAW AS-APPLIED TO ROA AND VRF ..................................................................6

     A.  The NVRA Does Not Require Disclosure of all Voter Registration Data and its Requirements are Limited to State Actors ...........................6

       1. The NVRA has Limited Public Disclosure Requirements...................7

       2. The NVRA's Disclosure Requirements Do Not Apply to Defendants .................................................................................10

     B.  No Actual Conflict Exists Between Daniel's Law and the NVRA ........13

   II.  DANIEL'S LAW IS NOT TOO RESTRICTIVE OF TRUTHFUL, POLITICAL SPEECH ..................................................................15

     A.  Daniel's Law Serves a State Interest of the Highest Order ..................17

     B.  Daniel's Law Is Narrowly Tailored as Applied to ROA and VRF.........19

   III. In the Alternative, Discovery on Defendants' As-Applied Constitutional Challenge Should Be Ordered............................................22

CONCLUSION ....................................................................................24

# <u>TABLE OF AUTHORITIES</u>

## <u>CASES</u>

*Accord Public Interest Legal Foundation v. Sec'y Commonwealth of Penn.*,
136 F. 4th 456 (3d Cir. 2025) ...................................................................7

*Arizona v. Inter Tribal Council of Ariz.*,
570 U.S. 1 (2013) .................................................................... 5, 11, 13

*Ashcroft v. ACLU*,
542 U.S. 656 (2004) ...........................................................................19

*B.V. v. Actavis, Inc.*,
2016 WL 3027446 (D.N.J. May 26, 2016) .........................................6

*Bartnicki v. Vopper*,
532 U.S. 514 (2001) ...........................................................................16

*Burns v. Thiokol Chem Corp.*,
483 F.2d 300 (5th Cir. 1973) .............................................................23

*Charles Kratovil v. City of New Brunswick*,
2025 WL 1689346 (N.J. Jun. 17, 2025) ............................................15

*Cipollone v. Liggett Group, Inc.*,
505 U.S. 504 (1992) ...........................................................................13

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000) .............................................................................7

*Florida Star v. B.J.F.*,
491 U.S. 524 (1989) ....................................................... 15, 18, 20, 21

*Free Speech Coal., Inc. v. Att'y Gen. U.S.*,
677 F.3d 519 (3d Cir. 2012) ..............................................................22

*Geier v. Am. Honda Motor Co.*,
529 U.S. 861 (2000) ...........................................................................15

*Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 721 F.3d 264 (4th Cir. 2013) ............................................................22

*Hedges v. United States*,
404 F.3d 744 (3d Cir. 2005) ...................................................................6

*Hines v. Davidowitz*,
312 U.S. 52 (1941) ...........................................................................13

*M & R Marking Sys., Inc. v. Top Stamp, Inc.*,
1996 WL 805485 (D.N.J. Nov. 20, 1996) .......................................................5

*Medtronic, Inc. v. Lohr*,
518 U.S. 470 (1996) ..........................................................................7

*Melo–Sonics Corp. v. Cropp*,
342 F.2d 856 (3d Cir.1965) ...................................................................5

*NCAA v. Christie*,
926 F. Supp. 2d 551 (D.N.J. 2013)............................................................8

*NCAA v. Governor of N.J.*,
730 F.3d 208 (3d Cir. 2013) ..................................................................8

*Ostergren v. Cuccinelli*,
615 F.3d 263 (4th Cir. 2010) ................................................................19

*Phillips v. Cnty. of Allegheny*,
515 F.3d 224 (3d Cir. 2008) .............................................................6, 23

*Pub. Int. Legal Found., Inc. v. Bellows*,
92 F.4th 36 (1st Cir. 2024) .................................................................11

*Richmond Med. Ctr. For Women v. Herring*,
570 F.3d 165 (4th Cir. 2009) ................................................................22

*Schrader v. DA of York Cnty.*,
74 F.4th 120 .................................................................................19

*Smith v. Daily Mail Publishing Co.*,
   443 U.S. 97 (1979) ...................................................................................15

*Snyder v. Phelps*,
   562 U.S. 443 (2011) ..................................................................................17

*United States v. Marcavage*,
   609 F.3d 264 (3d Cir. 2010) ........................................................................6

*Wyeth v. Levine*,
   555 U.S. 555 (2009) ........................................................................ 7, 13, 15

## **STATUTES**

52 U.S.C. § 20501(b)(1)-(4) .........................................................................7

52 U.S.C. § 20502(4) ..................................................................................10

52 U.S.C. § 20503(a) ..................................................................................10

52 U.S.C. § 20507(i)(1) ...............................................................................10

52 U.S.C. § 20507(i)(2) ...............................................................................10

52 U.S.C. § 20501(b) ....................................................................................5

52 U.S.C. § 20507(i) .....................................................................................7

*N.J.S.A* § 47:1B-1 ........................................................................................4

*N.J.S.A.* § 19:31-31 .............................................................................. 11, 12

*N.J.S.A.* § 19:31-31(1)(a) ...........................................................................11

*N.J.S.A.* § 19:31-31(b) ...............................................................................12

*N.J.S.A.* § 19:31-3.2 ....................................................................................9

*N.J.S.A.* § 2C:20-31.1 ........................................................................ 1, 4, 21

*N.J.S.A.* § 47:1A-1 ................................................................................................9

*N.J.S.A.* § 47:1A-1.1 .............................................................................................1

*N.J.S.A.* § 47:1B-1..............................................................................................1, 9

*N.J.S.A.* § 56:8-166.1 .................................................................................. 1, 4, 21

*N.J.S.A.* § 56:8-166.3 ........................................................................................3, 17

## **RULES**

Fed. R. Civ. P. 12(b)(6).........................................................................................1, 5

## **OTHER AUTHORITIES**

Senate Judiciary Committee Statement, Statement to Assembly Bill No. 6167,
(Jan. 6, 2022)…………………………………………………………………….4, 5

Senate Judiciary Committee Statement, Statement to Assembly Bill No. 1649,
(Oct. 22, 2020)…………………………………………………………………...3

**INTRODUCTION**

Defendants Restoration of America, Inc. ("ROA") and Voter Reference Foundation LLC ("VRF") (collectively, "Defendants") move to dismiss Plaintiffs' Complaint under Fed. R. Civ. P. 12(b)(6) arguing that: (1) the National Voter Registration Act, 52 U.S.C. § 20501 *et seq.* ("NVRA") preempts Daniel's Law[1] as applied to Defendants' disclosure of voter records; and (2) Daniel's Law is too restrictive of truthful, political speech. These arguments are unavailing and the motion should be denied.

First, Defendants misconstrue the NVRA's scope by claiming that it requires them to publish voter records. This claim is false. The NVRA requires the ***State*** to make specific government records related to voter registration programs available for public inspection, but it does not require the publication of voter information such as the addresses of all registered voters. Moreover, the NVRA imposes no requirement on private entities, such as ROA and VRF, to publish *any* voter information of any kind. Accordingly, Defendants' argument that the NVRA preempts *N.J.S.A.* § 56:8-166.1 fails. Second, as this Court and the New Jersey Supreme Court have held, Daniel's Law furthers a compelling state interest of the highest order: enabling judges, prosecutors, law enforcement officers, and child

---

[1] The statute at issue here is *N.J.S.A.* § 56:8-166.1. *See also* P.L. 2020, c. 125, codified at *N.J.S.A.* § 56:8-166.1; *N.J.S.A.* § 47:1A-1.1; *N.J.S.A.* § 47:1B-1; *N.J.S.A.* § 2C:20-31.1.

protective investigators to carry out their official duties without fear of personal reprisal. And Daniel's Law is not too restrictive, but rather narrowly tailored to that objective. Its protections apply only to specifically designated categories of public officials and are limited to just two categories of personal information—home addresses and unpublished home telephone numbers. Furthermore, Daniel's Law does not impose nondisclosure obligations or liability unless and until an authorized person expressly invokes its protections. Therefore, Plaintiffs respectfully submit that this Court should deny Defendants' Motion to Dismiss in its entirety.

## BACKGROUND

### Passage of Daniel's Law in New Jersey

In July 2020, the 20-year-old son of a sitting New Jersey Federal Judge was murdered at the front door of the family's New Jersey home by a gunman posing as a FedEx delivery man. Complaint at ¶5. Authorities later found that the murderer had certain political and personal grievances against the Judge and went to her home that day intending to kill her. *Id.* at ¶6. Instead, he murdered the Judge's son and critically wounded her husband. *Ibid.*

Investigators eventually connected this attack with the prior shooting of an attorney in California who was slain while answering his front door to pick up a supposed package from the same disguised gunman. Authorities concluded that the shooter was disgruntled over legal cases with similar political and legal issues to

what was pending before the Judge in New Jersey. Critically, the murderer found the home addresses of his targets through various Internet people finder resources; the same kind of data broker services offered by the Defendants. *Id.* at ¶7.

In response to this horrific shooting, the State of New Jersey enacted Daniel's Law in November 2020 to protect current and former judges, prosecutors, law enforcement officers, and their family members (defined thereunder as "Covered Persons"). The statute represents "legislative action directly related to, and intended to honor, Daniel Anderl, the son of a federal judge, who was shot and killed in July 2020 at the judge's family home by a person who had compiled a dossier of personal information about the judge, including the judge's home address."[2] The Legislature enacted Daniel's Law "to enhance the safety and security of certain public officials in the justice system," thereby enabling those officials to "carry out their official duties without fear of personal reprisal." *N.J.S.A.* § 56:8-166.3.

### **Operation of Daniel's Law**

Under Daniel's Law, any Covered Person may request that a data broker not "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise or offer . . . [which] shall include making available or viewable within a searchable list or

---

[2] *S. Judiciary Comm. Statement to A. 1649* (Oct. 22, 2020).

database, regardless of whether a search of such list or database is actually performed." *N.J.S.A.* § 56:8-166.1(d)(3).

The provisions of Daniel's Law at issue here, apply only if an "authorized person" has taken specific steps to prevent the disclosure of a Covered Person's home address or unpublished home telephone number. *Id.* at (a). Indeed, the statute specifically states that effective "not later than ten business days following receipt" of the statutory notice, "a person, business, or association shall not disclose or redisclose on the Internet or otherwise make available, the home address or unpublished home telephone number of any covered person." *Id.* at (a)(1).

Under Daniel's Law, no nondisclosure obligation is imposed on a person or entity in possession of a Covered Person's home address or unpublished home telephone number if that person or entity has not received the notice required by the statute. *N.J.S.A.* § 56:8-166.1(a) to (b); *N.J.S.A.* § 2C:20-31.1(b) to (c).

Notably, Daniel's Law also allows Covered Persons to redact their home address and phone number from the records of New Jersey government agencies—including voter registration records—by submitting a request for redaction to the Office of Information Privacy. *See e.g. N.J.S.A* § 47:1B-1, *et seq.* In other words, insofar as New Jersey law previously required home address and/or phone number as part of any official records (including voter records), Daniel's Law allows Covered Persons to remove that information from public disclosure. *Id.*; *see also*

Senate Judiciary Committee Statement, Statement to Assembly Bill No. 6167, at 2 (Jan. 6, 2022).

### The NVRA

The NVRA, more commonly known as the Motor Voter Law, was enacted in 1993 to expand voter registration nationwide and to establish certain voter registration standards and processes for federal elections. *See generally* 52 U.S.C. § 20501(b). This included requiring that citizens be permitted to register to vote at Motor Vehicle Commissions and other designated government offices, and that registration be made available to eligible voters who complete the standardized federal voter registration form. *Id.* at 20505, *et seq.* The NVRA lets State law dictate all matters related to the categories of voter registration information to make publicly available and requires only that states accept a federal voter registration form for federal elections. *Arizona v. Inter Tribal Council of Ariz.*, 570 U.S. 1, 12 (2013).

## LEGAL STANDARD

"As the long-established federal policy of civil litigation is to decide cases on the proofs, the district courts generally disfavor Rule 12(b)(6) motions." *M & R Marking Sys., Inc. v. Top Stamp, Inc.*, 1996 WL 805485, at *5 (D.N.J. Nov. 20, 1996) (citing, *inter alia*, *Melo–Sonics Corp. v. Cropp*, 342 F.2d 856 (3d Cir.1965)). In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must "accept as true all factual allegations in the complaint and draw all inferences from the facts

alleged in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The moving party carries the burden of proving that no claim has been stated. *B.V. v. Actavis, Inc.*, 2016 WL 3027446, at *2 (D.N.J. May 26, 2016) (citing *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005)).

## I.    THE NVRA DOES NOT PREEMPT DANIEL'S LAW AS APPLIED TO ROA AND VRF

An as-applied challenge to the constitutionality of a statute "does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010). Here, Defendants' as-applied challenge that the NVRA preempts Daniel's Law (*see* Defs.' Br. at 4-5) fails because (1) the NVRA does not require the publication of all voter registration data, including every voter's name and home address, or name and phone number; (2) the limited disclosure requirements under the NVRA are limited to State actors; and (3) no actual conflict exists between *N.J.S.A. § 56:8-166.1* and the NVRA.

### A. The NVRA Does Not Require Disclosure of all Voter Registration Data and its Requirements are Limited to State Actors

Defendants misconstrue the requirements of the NVRA, whose stated purpose is to: (i) "establish procedures that will increase the number of eligible citizens who

register to vote in elections for Federal office,"; (ii) "enhance[] the participation of eligible citizens as voters in elections for Federal office"; (iii) "protect the integrity of the electoral process,"; and (iv) "ensure that accurate and current voter registration rolls are maintained." *See* 52 U.S.C. § 20501(b)(1)-(4). "What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000); *see also Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) ("the purpose of Congress is the ultimate touchstone in every [preemption] case.")).

The overarching purpose of the NVRA is to encourage states to facilitate voter registration for federal elections while ensuring *the states themselves* maintain accurate and up-to-date voter registration rolls. Here, Defendants' argument regarding NVRA preemption fails because: (1) the NVRA does not require disclosure of all voter registration data; and (2) the disclosures required under the NVRA apply only to the government and not to private companies like Defendants.

### 1. The NVRA has Limited Public Disclosure Requirements

Despite Defendants' claims to the contrary, Section 20507(i) of the NVRA does ***not*** mandate the disclosure of all voter data maintained by State elections officials. Rather, the law simply requires that certain records regarding the implementation of its mandates be made available for public inspection. 52 U.S.C.

§ 20507(i). *Accord Public Interest Legal Foundation v. Sec'y Commonwealth of Penn.*, 136 F. 4th 456 (3d Cir. 2025) (noting limitations on accessing some types of voter registration data). The clarity of the statutory language in this regard is fatal to Defendants' motion.

Moreover, the provision of information has long been subject to any State law or regulation limiting its scope or use. *See e.g.,* 5 U.S.C. § 552 (b)(1)–(9) (Congress established nine exemptions under the 1967 Freedom of Information Act to protect against the invasion of personal privacy and interference with other laws and regulations, including, information prohibited by other statutes, law enforcement records that could interfere with proceedings or invade personal privacy, information that is prohibited from disclosure by another federal law, or trade secrets or commercial or financial information that is confidential or privileged); *see also NCAA v. Christie*, 926 F. Supp. 2d 551 at n. 24 (D.N.J. 2013), *aff'd sub nom NCAA v. Governor of N.J.*, 730 F.3d 208 (3d Cir. 2013) (noting that the Privacy Act creates exceptions to generalized NVRA provisions). Indeed, several states restrict or redact voter registration information disclosed under public records laws. *See e.g.* HRS 11-97, 11-14, 11-14.5 (Hawaii) (noting that significant voter information is kept confidential); MD Code, Election Law, 3-506, COMAR 33.03.02.03, 33.05.02.02, 33.04.02.02 (Maryland) (same, noting certain information can be requested and rejected); M.S.A. 201.091 (Minnesota) (same). In addition, most states withhold

8

certain voter information from public disclosure for specific purposes, such as protecting victims of domestic violence. *See* United States Election Assistance Commission, *Voter Lists: Registration, Confidentiality, and Voter List Maintenance",* March 15, 2024. Finally, there are several states, such as Idaho, Minnesota, and New Hampshire, that are entirely exempt from NVRA requirements due to their state voter registration schemes. *Id.*

New Jersey has similar laws restricting the disclosure of voter registration information. First, there is Daniel's Law, which restricts who can obtain unredacted voter registration information. *N.J.S.A.* § 47:1B-1, *et seq.* In addition, New Jersey has long permitted victims of domestic violence to shield their addresses from disclosure. *N.J.S.A.* § 19:31-3.2 (criminalizing improper disclosure of certain voter registration information for victims of domestic violence); *see also N.J.S.A.* § 47:1A-1, *et. seq.* (including nearly 40 specific exemptions from disclosure under the New Jersey Open Public Records Act); *N.J.S.A.* § 47:1A-1 ("a public agency has a responsibility and an obligation to safeguard from public access a citizen's personal information with which it has been entrusted when disclosure thereof would violate the citizen's reasonable expectation of privacy[.]").

Thus, for each of these equally dispositive reasons, the NVRA does not preempt *N.J.S.A.* § 56:8-166.1 or any State privacy law regarding restrictions on

publication of categories of voter registration data, and as a result Defendants' motion to dismiss should be denied on this basis alone.

### 2. The NVRA's Disclosure Requirements Do Not Apply to Defendants

Defendants' arguments also fail because the NVRA's public disclosure requirements apply solely to *State* actors—not to private actors like ROA and VRF. Section 20503, entitled "National procedures for voter registration for elections for Federal office", states that ". . . each *State*[3] shall establish procedures to register to vote in election for Federal office." *See* 52 U.S.C. § 20503(a) (emphasis added). Section 20507(i), entitled "Public Disclosure of Voter Registration Activities", states that "[e]ach *State* shall maintain…and shall make available for public inspection…all records [such as voter registration information] concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." *See* 52 U.S.C. § 20507(i)(1) (emphasis added). Section 20507(i)(2) further clarifies that "[t]he records maintained pursuant to paragraph (1) shall include lists of the names and addresses of all persons . . . ." *See* 52 U.S.C. § 20507(i)(2).

The plain text of the NVRA makes clear that it is the State—and ***only*** the State—that bears responsibility for maintaining and disclosing voter registration

---

[3] "[T]he term 'State' means a State of the United States and the District of Columbia." *See* 52 U.S.C. § 20502(4).

records under the NVRA. Private entities like ROA and VRF have no such obligation.

As such, Defendants' assertion that the NVRA "explicitly requires the public disclosure of all [voter] records" and reliance on *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36 (1st Cir. 2024) fails. *See* (Defs.' Br. at 4). In *Bellows*, the First Circuit ruled on an appeal from the United States District Court for the District of Maine, in which the plaintiff alleged that Maine's then-Secretary of State violated Section 8(i)(1) of the NVRA by denying access to the State's voter file. 92 F.4th at 43. The NVRA's public disclosure provision requires that certain voter registration records maintained by the ***State*** be made accessible to the public, but it does not govern the disclosure of such information by private entities such as ROA and VRF. *See Arizona v. Inter Tribal Council of Ariz., Inc.,* 570 U.S. 1, 15 (2013) (holding that the NVRA requirements are directed at state voter registration procedures).

Therefore, Defendants' argument that Daniel's Law, as applied to them, prohibits compliance with the NVRA's disclosure requirements is unpersuasive. The NVRA does not require ROA or VRF to disclose voter registration records. Accordingly, Daniel's Law is not preempted by the NVRA as applied to Defendants.

Similarly, New Jersey's implementation of a Statewide Voter Registration System ("SVRS"), which is the official "State repository for voter registration information", is of no consequence as it relates to Defendants' as-applied challenge.

*See N.J.S.A.* § 19:31-31. As per the NVRA, the SVRS voter registration records and database system "shall be under the direct control of the Secretary of State." *See N.J.S.A.* § 19:31-31(1)(a). Moreover, "the system is accessible **only** to those executive departments and State agencies so designated by the Secretary of State, each county commissioner of registration, each county and municipal clerk, and individuals under certain circumstances, as provided for by this section." *Ibid* (emphasis added). Defendants do not provide any support for the contention that they are entitled to the voter registration records in the SVRS database.

Furthermore, Defendants are correct that *N.J.S.A.* § 19:31-31(b)(1) states the SVRS shall include "the name and registration information of every legally registered voter in the State." *See* (Defs.' Br. at 3). However, conspicuously absent from Defendants' reliance on the SVRS is subsection (3) of *N.J.S.A.* § 19:31-31(b), which states that "interactivity among appropriate State agencies so designated by the Secretary of State, each county commissioner of registration, each county board of elections, and each county clerk such that ***these entities shall have immediate electronic access to all or selected records in the system, as determined by the Secretary of State, to receive or transmit all or selected files in the system and to print or review all or selected files in the system***." (emphasis added). Defendants ROA and VRF are not the Secretary of State, a county commissioner of registration, a county board of elections, or a county clerk, and therefore are not entitled to access,

receive, or transmit voter registration records in the SVRS database. Therefore, Defendants' arguments pertaining to the NVRA and the SVRS are unpersuasive and fail under the express language of these statutes.

### B. No Actual Conflict Exists Between Daniel's Law and the NVRA

In addition, because the NVRA places a public disclosure requirement exclusively on the State, no actual conflict exists between *N.J.S.A.* § 56:8-166.1 and the NVRA. Courts recognize three types of preemption: express preemption, conflict preemption, and field preemption. *See Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992). Conflict preemption may occur "where the challenged state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *See Bellows*, 92 F.4th 36, 52 (1st Cir. 2024) (citing *Arizona v. United States*, 567 U.S. 387, 399 (2012) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, (1941))). Conflict preemption exists when compliance with both federal and state law is impossible or where the state law obstructs the federal law's objectives. *See Wyeth v. Levine*, 555 U.S. 555, 573 (2009).

That is not the case here. Federal preemption requires an "actual conflict" where compliance with both federal and state law is impossible or the state law "stands as an obstacle to the accomplishment" of federal objectives. *Bellows*, 92 F.4th at 38. *N.J.S.A.* § 56:8-166.1 does not stand as an obstacle interfering with Defendants' ability to comply with any federal laws, specifically the NVRA. This

motion is nothing more than Defendants seeking to avoid accountability for their violations of Daniel's Law. Defendants ignore the indisputable fact that Daniel's Law has existed since 2020 and imposes fewer demands than other privacy statutes—such as California's CCPA—that have long required companies to comply with comparable privacy requests. The Defendants—and, more broadly, all data brokers who handle sensitive personal information—have had years to comply with Daniel's Law and similar privacy statutes across the United States. None of these laws, nor the associated requests to cease disclosing individuals' information, should come as a surprise. Daniel's Law was not rushed nor were companies deprived of notice of its existence. The law was a direct response to a nationally publicized tragedy—a targeted assassination attempt resulting in the murder of a federal judge's child—that received widespread media coverage and prompted significant public discourse. Following national advocacy by Judge Salas and other targeted officials, Congress passed a federal counterpart which was enacted in 2022, and at least eight other states have adopted similar judicial privacy laws. Daniel's Law was developed over numerous legislative sessions and underwent several amendments, giving Defendants ample time and opportunity to assess their obligations and ensure compliance. Accordingly, no actual conflict exists between Daniel's Law and the NVRA.

Defendants can indeed access voter registration records and publish them on their website for their stated purpose, but they must also comply with Daniel's Law. Nothing in the NVRA bars Defendants from redacting or removing Covered Persons' home addresses and unpublished home telephone numbers—they simply chose not to do so within ten business days of receiving non-disclosure requests in violation of *N.J.S.A.* § 56:8-166.1. The only "conflict" between Daniel's Law and the NVRA is one of Defendants' own making. *See Wyeth* 555 U.S. at 573 (no impossibility where defendant can comply through reasonable action). The purpose of Daniel's Law—enabling Covered Persons to carry out their official duties without fear of personal reprisal—does not impede the NVRA's objectives. *See Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 870 (2000) (no preemption where state law does not significantly interfere with federal objectives).

Therefore, Defendants' arguments that Daniel's Law "erect[s] an impenetrable barrier" to compliance with the NVRA (*see* Defs.' Brief at 5) lack merit and their motion to dismiss should be denied.

## II.    DANIEL'S LAW IS NOT TOO RESTRICTIVE OF TRUTHFUL, POLITICAL SPEECH

"[T]he conflict between free speech and privacy rights must be decided on a case-by-case basis." *Kratovil v. City of New Brunswick,* 2025 WL 1689346 at *24 (N.J. Jun. 17, 2025) (citing *Florida Star v. B.J.F.*, 491 U.S. 524, 533 (1989) and *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97 (1979)). Courts should resolve

15

conflicts "between the right which the First Amendment" protects and "the protections which various statutes and common-law doctrines accord to personal privacy against the publication of truthful information" only "in a discrete factual context." *Florida Star*, 491 U.S. at 530. The *Bartnicki* case is instructive here as the Court reiterated its "repeated refusal to answer categorically" whether privacy restraints on "truthful publication" are "consistent with the First Amendment," and held only that the "privacy concerns" present on the facts of <u>those cases</u> were outweighed by "the interest in publishing matters of public importance." *Bartnicki v. Vopper*, 532 U.S. 514, 529 (2001). Characterizing its holding as "limited," the Supreme Court stated,

> ***We do not hold that truthful publication is automatically constitutionally protected***, or that there is no zone of personal privacy within which the State may protect the individual from intrusion by the press, or even that a State may never punish publication of the name of a victim of a sexual offense. We hold only that where a newspaper publishes truthful information which it has lawfully obtained, punishment may lawfully be imposed, if at all, only when narrowly tailored to a state interest of the highest order, and that no such interest is satisfactorily served by imposing liability under [the Florida statute] . . . under the facts of this case.

*Daily Mail*, 443 U.S. at 541(emphasis added); *accord Bartnick*i, 532 U.S. at 527.

Defendants argue that Daniel's Law violates the First Amendment by restricting their truthful, political speech—the publishing of "available voter records[.]" *See* (Defs.' Br. at 1). However, truthful, political speech does not automatically mandate constitutional protections, especially, as in the case here,

where Plaintiffs' "privacy concerns" are not outweighed by "the interest in publishing matters of public importance." *See Bartnicki*, 532 U.S. at 527. Moreover, even if Defendants' published voter records are: (i) truthful, political speech, (ii) lawfully obtained, and (iii) matters of public concern[4], as alleged by Defendants, restrictions may still be lawfully imposed under Daniel's Law if the statute is narrowly tailored to a state interest of the highest order. *See Daily Mail*, 443 U.S. at 541; *accord Bartnicki*, 532 U.S. at 527.

**A. Daniel's Law Serves a State Interest of the Highest Order**

As the Legislature instructed, Daniel's Law "shall be liberally construed in order to accomplish its purpose and the public policy of this State"—namely, the protection of certain public officials and their immediate families from threats and harm that could impede their ability to serve the public. *See Kratovil*, 2025 WL 1689346 at * 23. Defendants concede that "[t]he death of Daniel Anderl was a tragedy. And, [] protecting public officials is a compelling State interest[.]" *See* (Defs.' Br. at 1). In a recent opinion denying a similar as-applied challenge to Daniel's Law, the New Jersey Supreme Court opined that:

> as the Legislature expressly provided, it enacted Daniel's Law 'to enhance the safety and security of certain public officials in the justice

---

[4] Speech deals with matters of public concern when it can "be fairly considered as relating to any matter of political, social, or other concern to the community," or when it "is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Kratovil,* 2025 WL 1689346 at *26 (citing *Snyder v. Phelps*, 562 U.S. 443, 452-53 (2011)).

system, including judicial officers, law enforcement officers, child protective investigators in the Division of Child Protection and Permanency, and prosecutors, who serve or have served the people of New Jersey,' and their immediate family members, 'to foster the ability of these public servants who perform critical roles in the justice system to carry out their official duties without fear of personal reprisal from affected individuals related to the performance of their public functions.'

*Kratovil*, 2025 WL 1689346 at * 33 (quoting *N.J.S.A.* 56:8-166.3).

Similarly, "[i]n a federal challenge to Daniel's Law, the United States District Court for the District of New Jersey noted 'the well-known fact, amply documented by the record [in that case], that in recent years judges, prosecutors, police, correctional officers, and others in law enforcement have been the subject of an ever increasing number of threats and even assassinations,' some of which 'have been facilitated by malefactors obtaining the home address or unlisted phone number of their targets.'" *Kratovil*, 2025 WL 1689346 at * 34 (citing *Atlas Data Priv. Corp. v. We Inform*, 758 F. Supp. 3d 322, 337 (D.N.J. 2024)). The Attorney General's amicus submission in the federal challenge of Daniel's Law cited numerous sources, "including a statistical report by the U.S. Marshals Service and news coverage of the recent killing of a New Jersey police officer, that underscore the persistence and severity of the problem the Legislature enacted Daniel's Law to address." *Ibid.*

As the Court determined, "New Jersey's interest in protecting public officials from such threats and thus ensuring that they may carry out their duties without fear of harm to themselves or their families is clearly a state interest of the highest order

under <u>Daily Mail</u> and <u>Florida Star</u>." *Kratovil*, 2025 WL 1689346 at * 34. Other Courts have determined that if harm may result from public disclosure of private information, limiting public disclosure may constitute a state interest of the highest order. *See Florida Star*, 491 U.S. at 534-535 (publication of rape victim's name not protected where it risked harm); *Ostergren v. Cuccinelli*, 615 F.3d 263, 280 (4th Cir. 2010) (quoting *Daily Mail*, 443 U.S. at 103) ("[g]iven the serious privacy concerns and potential harm stemming from [Social Security number] dissemination, Virginia's asserted interest in protecting individual privacy by limiting [Social Security numbers'] public disclosure may certainly constitute 'a state interest of the highest order[]'").

Here, Defendants do not refute that Daniel's Law furthers a state interest of the highest order. Thus, Defendants' bulk publication of voter records—including Covered Persons' personal information—is not constitutionally protected, even if truthful, as Daniel's Law is narrowly tailored to a state interest of the highest order. Therefore, Defendants' assertion that Daniel's Law is unconstitutional as applied to "truthful information of public concern" (*see* Defs.' Br. at 6-8) fails as a matter of law.

### B. Daniel's Law Is Narrowly Tailored as Applied to ROA and VRF

Daniel's Law is narrowly tailored and employs the least restrictive means. "To narrowly tailor, the state must choose 'the least restrictive means among available,

effective alternatives.'" *Schrader v. DA of York Cnty.*, 74 F.4th 120, 127 (quoting *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004)). In *Kratovil*, the New Jersey Supreme Court opined that "the Legislature carefully calibrated the [Daniel's Law] statute to serve a state interest of the highest order by the least restrictive means." *Kratovil*, 2025 WL 1689346 at * 34.

Here, Defendants simply argue that Daniel's Law is too restrictive by comparing it to the Daniel Anderl Judicial Security and Privacy Act ("DAJSPA"), and specifically highlight that: (i) Daniel's Law defines a broader category of Covered Persons; (ii) DAJSPA limits initial relief to injunctive remedies, while Daniel's Law provides a private right of action for money damages; and (iii) Daniel's Law contains no exceptions for matters of public concern. *See* (Defs.' Br. at 8-9). However, these "comparisons" are unpersuasive and fail to demonstrate that Daniel's Law is not the least restrictive means available.

This issue has been decided by both this Court and the New Jersey Supreme Court, noting that (i) the protections afforded by Daniel's Law do not extend to all public employees; rather, they are expressly limited to specific categories of current and former public officials whom the Legislature has identified as being at particular risk of harm; (ii) Daniel's Law restricts disclosures of only two categories of information when linked to a Covered Person's name—home addresses and unpublished home telephone numbers; and (iii) Daniel's Law does not impose

liability for the disclosure of a Covered Person's protected information unless and until an authorized person expressly invokes its protection by providing notice as required under the statute. *See Kratovil*, 2025 WL 1689346 at * 35-36 (citing Daniel's Law and *Florida Star*, 491 U.S. at 536). Therefore, *Kratovil* confirms that the Legislature carefully calibrated Daniel's Law to further a compelling state interest of the highest order through the least restrictive means available.

Finally, Defendants' argument that Daniel's Law "raises under-inclusiveness" concerns because the home addresses and unpublished home telephone numbers of Covered Persons may be widely available to public agencies and not the Defendants (*see* Defs.' Br. at 10) is equally unpersuasive. Indeed, the *Kratovil* Court opined that:

> Daniel's Law is not focused on media in general, let alone a particular category of media; N.J.S.A. 56:8-166.1(a) and (b) apply to 'a person, business, or association,' and N.J.S.A. 2C:20-31.1(b) applies to 'a person.' Consistent with the Legislature's intent to protect covered persons from disclosures that may harm them, '[a]ll non-governmental entities are treated the same.' *Atlas Data*, 758 F. Supp. 3d at 338.

[*Kratovil*, 2025 WL 1689346 at * 37]. Further, the *Kratovil* Court ruled that "Daniel's Law is not underinclusive and thus inadequate to serve the state interest, as were the statutes struck down by the United States Supreme Court in Daily Mail and Florida Star." *Id.* at * 36. Therefore, Defendants' underinclusive argument is not compelling. For this additional reason, Defendants' motion should be denied.

### III.    In    the    Alternative,    Discovery    on    Defendants'    As-Applied Constitutional Challenge Should Be Ordered

Plaintiffs respectfully request, in the alternative, that the Court permits discovery on Defendants' as-applied constitutional challenge prior to ruling on the motion to dismiss. Courts evaluating as-applied constitutional claims routinely recognize the necessity of a developed factual record to determine whether the statute or regulation, as enforced against a party, violates constitutional protections.

This principle has been applied by the Third Circuit. In *Free Speech Coal., Inc. v. Att'y Gen. U.S.*, 677 F.3d 519, 533 (3d Cir. 2012), the court vacated the District Court's dismissal of an as-applied First Amendment claim holding that "Plaintiffs should be afforded the opportunity to conduct discovery and develop the record regarding whether the Statutes are narrowly tailored." In its later decision in *Free Speech Coal., Inc. v. Att'y Gen. of U.S.*, 974 F.3d 408, 417 (3d Cir. 2020), the Third Circuit emphasized again the need for discovery before dismissal of an as-applied claim. Similarly, in the Fourth Circuit case of *Richmond Med. Ctr. For Women v. Herring*, 570 F.3d 165, 172 (4th Cir. 2009), the Court noted a division between "facial" challenges and "as-applied" challenges explaining that as-applied challenges are "based on a developed factual record and the application of a statute to a specific person" and entail "case-by-case analyses"); *see also Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 721 F.3d 264, 282 (4th Cir. 2013) (citing *Richmond Med. Ctr. For Women*, 570 F.3d at 172)

(holding that "to properly employ an as-applied analysis, the court was obliged to first afford the City discovery").

Federal Rule of Civil Procedure 26(b) supports this approach by permitting discovery for "any nonprivileged matter that is relevant to any party's claim or defense." As the Fifth Circuit noted, "[t]he discovery provisions of the Federal Rules of Civil Procedure allow the parties to develop fully and crystalize concise factual issues for trial." *See Burns v. Thiokol Chem Corp.*, 483 F.2d 300, 304 (5th Cir. 1973); *see also Phillips v. County of Allegheny,* 515 F.3d 224, 234–35 (3d Cir. 2008) (in order to survive a motion to dismiss, the factual allegations in a complaint must "raise a reasonable expectation that discovery will reveal evidence of the necessary element," thereby justifying the advancement of "the case beyond the pleadings to the next stage of litigation.").

Here, alternatively, the Court should permit discovery on Defendants' as-applied challenge prior to ruling on the motion to dismiss so that the adjudication of this challenge is based on a developed factual record regarding Daniel's Law as applied to Defendants. The specious allegations raised by Defendants in their motion, including the allegation that "Daniel's Law 'erect[s] an impenetrable barrier for those seeking to use the Voter File to evaluate and enforce compliance with the NVRA nationwide" (*see* Defs'. Brief at 5) cannot be taken at face value. Discovery

should be permitted by this Court to assess these allegations, in the alternative, before rendering a decision on Defendants' motion to dismiss.

## <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiffs respectfully submit that Defendants' Motion to Dismiss should be denied.

Respectfully Submitted,

**PEM LAW LLP**

*s/ Rajiv D. Parikh*
Rajiv D. Parikh