John E. MacDonald, Esq. (Attorney ID 011511995)
**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**
3120 Princeton Pike, Suite 301
Lawrenceville, NJ 08648
(609) 357-1183 (tel)
(609) 844-1102 (fax)
*jmacdonald@constangy.com*
*Attorneys for Defendants Restoration of America, Inc.*
*and Voter Reference Foundation LLC*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons,* JANE DOE-1, *a law enforcement officer,* JANE DOE-2, *a law enforcement officer,* EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, and WILLIAM SULLIVAN, | (Electronically Filed) |
| Plaintiffs, | CIVIL ACTION |
| v. | Civil Action No. 1:24-cv-4324 |
| RESTORATION OF AMERICA, VOTER REFERENCE FOUNDATION LLC, RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities,* | |
| Defendants. | |

## REPLY IN SUPPORT OF DEFENDANTS' AMENDED MOTION TO DISMISS THE COMPLAINT

## <u>TABLE OF CONTENTS</u>

I.  THE NATIONAL VOTER REGISTRATION ACT PREEMPTS DANIEL'S LAW'S RESTRICTIONS ON THE PUBLIC DISCLOSURE OF VOTER RECORDS ....................................................................................1

   A.  Daniel's Law is preempted because it obstructs the NVRA's purposes..........2

   B.  Plaintiffs' remaining arguments are irrelevant to preemption analysis ...........7

II.  DANIEL'S LAW IS TOO RESTRICTIVE TO SURVIVE VRF'S AS-APPLIED CHALLENGE .......................................................................10

III.  DISCOVERY IS NOT NEEDED TO DECIDE A LEGAL BURDEN.........14

IV.  CONCLUSION ...........................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. Inter Tribal Council of Ariz.*,
570 U.S. 1, 12 (2013)................................................................1, 11

*Arizona v. United States*,
567 U.S. 387, 399 (2012)................................................................3

*Atlas Data Priv. Corp. v. We Inform, LLC*,
758 F. Supp. 3d 322, 336, 337 (D.N.J. 2024)....................................13

*Atlas Data Priv. Corp. v. We Inform, LLC*,
758 F. Supp. 3d 322, 338 (D.N.J. 2024)............................................16

*Bartnicki v. Vopper*,
532 U.S. 514, 534 (2001)................................................................15

*Bellitto v. Snipes*,
935 F.3d 1192, 1198 (11th Cir. 2019) ................................................5

*Brennan v. Bergen Cnty. Prosecutor's Off.*,
233 N.J. 330, 343 (2018) ................................................................15

*Burnett v. County of Bergen*,
198 N.J. 408, 414 (2009) ................................................................15

*Cox Broad. Corp. v. Cohn*,
420 U.S. 469, 494–95 (1975)..........................................................13

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363, 373 (2000)..................................................................3

*D.C. v. Superintendent of Elections*,
261 N.J. Super. 366, 369 (Law. Div. 1992).......................................16

*Free Speech Coal., Inc. v. Att'y Gen. U.S.*,
677 F.3d 519 (3d Cir. 2012) ...........................................................18

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
505 U.S. 88, 98 (1992)....................................................................7

*Greater Birmingham Ministries v. Sec'y of State*,
105 F.4th 1324, 1326 (11th Cir. 2024) ...............................................5

*Kratovil v. City of New Brunswick*,
No. 089427, 2025 WL 1689346, at *24 (N.J. June 17, 2025) ................ 12, 13, 14

*Mazo v. New Jersey Sec'y of State*,
54 F.4th 124 (3d Cir. 2022) ...................................................................18

*Mazo v. Way*,
551 F. Supp. 3d 478, 508 fn. 12 (D.N.J. 2021) .....................................18

*McKay v. Thompson*,
226 F.3d 752, 755 (6th Cir. 2000) .........................................................11

*NCAA v. Christie*,
926 F. Supp. 2d 551, 556 n. 24 (D.N.J. 2013) .......................................11

*Paff v. Ocean Cnty. Prosecutor's Off.*,
235 N.J. 1, 16–17 (2018) .......................................................................16

*Project Vote/Voting for Am., Inc. v. Long*,
682 F.3d 331, 339 (4th Cir. 2012) ...........................................................4

*Pub. Int. Legal Found. v. Sec'y of Pa.*,
136 F.4th 456, 461 (3d Cir. 2025) ............................................................5

*Pub. Int. Legal Found., Inc. v. Bellows*,
92 F.4th 36, 54–56 (1st Cir. 2024) ............................................... passim

*Pub. Int. Legal Found., Inc. v. Knapp*,
749 F. Supp. 3d 563, 572 (D.S.C. 2024) ..................................................8

*Rutgers Univ. Student Assembly v. Middlesex Cnty. Bd. of Elections*,
446 N.J. Super. 221, 240–41 (App. Div. 2016) .....................................17

*Sullivan v. Summers*,
769 F. Supp. 3d 455 (D. Md. 2025) ..........................................................7

*The Fla. Star v. B.J.F.*,
491 U.S. 524, 535 (1989) ......................................................................15

*United States v. Midwest Video Corp.*,
406 U.S. 649, 667, n.26 (1972) .............................................................15

*Voter Reference Found., LLC v. Torrez*,
727 F. Supp. 3d 1014, 1220–1223 (D.N.M. 2024) ..............................1, 8

**Constitutional Provisions**

U.S. Const. art. I, § 4, cl. 1. ...................................................................................11

**Statutes**

5 U.S.C. § 552 (b)(1)–(9) .........................................................................................9

52 U.S.C. § 20501(b)(3) ...........................................................................................4

52 U.S.C. § 20507(i) .............................................................................................2, 3

52 U.S.C. § 20507(i)(2) ............................................................................................8

52 U.S.C. § 20501 ....................................................................................................3

Me. Rev. Stat. Ann. tit. 21-A, § 196-A(1)(J)(2) ...................................................5, 6

N.J. Stat. § 19:31-3.2................................................................................................8

N.J. Stat. Ann. § 19:31-6.4.....................................................................................14

N.J.S.A. § 56:8-166.1.............................................................................................10

N.J.S.A. 19:31–18.1 ...............................................................................................13

N.J.S.A. 19:31–6.3(b) ............................................................................................14

N.S.J.A 47:1B-1 .....................................................................................................11

N.S.J.A 47:B-2 .......................................................................................................11

**Other Authorities**

COMAR 33.03.02.01.B(3)........................................................................................6

I.     THE NATIONAL VOTER REGISTRATION ACT PREEMPTS
       DANIEL'S LAW'S RESTRICTIONS ON THE PUBLIC
       DISCLOSURE OF VOTER RECORDS

Plaintiffs misapprehend the function of the NVRA here, arguing that it is of

no import because it places obligations on state governments, not private entities like

VRF—but that is precisely the point. The NVRA requires states to make voter

records publicly available, and conversely, prohibits states from restricting the very

disclosure required by federal law.[1] Daniel's Law does what the NVRA prohibits by

imposing civil and criminal penalties for disclosing the very same information the

NVRA says must be made publicly available. State attempts to prevent disclosure of

NVRA records have been repeatedly held to be preempted. *See Pub. Int. Legal*

*Found., Inc. v. Bellows*, 92 F.4th 36, 54–56 (1st Cir. 2024); *Voter Reference Found.,*

*LLC v. Torrez*, 727 F. Supp. 3d 1014, 1220–1223 (D.N.M. 2024).

New Jersey's indirect attempt, deputizing private litigants to wield the Law's

chilling penalties rather than the State itself, cannot save Daniel's Law from the same

fate. Whether or not the statute lawfully applies to the activities of other defendants

Atlas sued the same day as VRF, it cannot prohibit VRF's publication of the same

---

[1] Plaintiffs claim the NVRA's edicts are limited to use of a federal voter registration form and that it permits the states to "dictate all matters related to the categories of voter registration information to make publicly available." PageID 1536. This is flatly wrong. *Arizona v. Inter Tribal Council of Ariz.*, 570 U.S. 1, 12 (2013), required use of a federal form, but said nothing of public disclosure. It did, however, reiterate the NVRA's preemptive force: "When Congress legislates with respect to the 'Times, Places and Manner' of holding congressional elections, it *necessarily* displaces some element of a pre-existing legal regime erected by the States." *Id.* at 14 (emphasis added).

1

basic voter records the NVRA requires be made publicly available. Allowing this suit to proceed would frustrate Congress' purposes by permitting New Jersey to nullify the NVRA's public disclosure requirement. *See* 52 U.S.C. § 20507(i).

### A. Daniel's Law is preempted because it obstructs the NVRA's purposes

Daniel's Law, as applied to VRF, conflicts with and is preempted by the NVRA. Plaintiffs misunderstand conflict preemption, asking whether the law makes it impossible for VRF to comply with both federal and state law.[2] But VRF has never claimed that the NVRA requires it to disclose information to anyone.[3] Rather, Daniel's Law is preempted under obstacle preemption because it frustrates the Congressional purposes made explicit in the NVRA and advanced by its public disclosure requirement: to enhance election integrity and voter participation by exposing voter records to the sunlight of public disclosure. Daniel's Law punishes VRF for doing precisely what Congress permitted by conferring on VRF (and the public) the right to obtain and publish voter records under 52 U.S.C. § 20507(i).

State laws that prohibit or frustrate what federal law allows are preempted. "The Supremacy Clause sits at the epicenter of every preemption question… any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Bellows*, 92 F.4th at 51. State laws

---

[2] Dkt. No. 71, Plaintiffs' Response Opposing Dkt. No.16 at PageID 1545 (arguing that Daniel's Law "does not stand as an obstacle interfering with Defendants' ability to comply with any federal laws, specifically the NVRA.").
[3] *Id.*, Part I.A.2 at PageID 1541–1544.

that "stand[] as an obstacle to the accomplishment and execution of the <u>full</u> purposes and objectives of Congress…" are preempted. *Id.* at 55 (*Bellows* court's emphasis) (quoting *Arizona v. United States*, 567 U.S. 387, 399 (2012)).

To determine whether a state law obstructs the NVRA, courts "must examine the NVRA as a <u>whole</u> to identify its purpose and intended effects." *Id.* (cleaned up) (*Bellows* court's emphasis) (quoting *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000)). Fortunately, Congress explicitly identified the NVRA's purposes within its text: to "establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office," to "enhance the participation of eligible citizens as voters in elections for Federal office," "to protect the integrity of the electoral process," and "to ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501.

"To further [those] purposes, Congress created [a public disclosure provision] along with a private right of action for members of the public to enforce the provision's disclosure mandate." *Bellows*, 92 F.4th at 52. That public disclosure provision mandates that "[e]ach State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i). The public disclosure provision

"assist[s] the identification of both error and fraud in the preparation and maintenance of voter rolls." *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012). And courts recognize that the public disclosure provision advances all four Congressional purposes, although they may sometimes *appear* in tension. *See Greater Birmingham Ministries v. Sec'y of State*, 105 F.4th 1324, 1326 (11th Cir. 2024) ("More than thirty years ago, the [NVRA] required states to adopt a wide variety of policies designed to increase both voter participation and election integrity. The disclosure provision of that Act serves both goals by granting voters transparency into a state's voter registration practices."); *Bellitto v. Snipes*, 935 F.3d 1192, 1198 (11th Cir. 2019) ("[B]ecause Congress also recognized that easing registration barriers could threaten the integrity of our elections, the legislation set forth another set of goals: 'to protect the integrity of the electoral process' and 'to ensure that accurate and current voter registration rolls are maintained.'").

Despite the statute's text, Plaintiffs contend the public disclosure provision is limited and that the NVRA's "overarching purpose" is only to encourage voter participation,[4] and, presumably, that election integrity, 52 U.S.C. § 20501(b)(3), and list maintenance, (b)(4), are subordinated. The First, Fourth, and Eleventh Circuits

---

[4] PageID1538–39. The sole authority Plaintiffs cite for their diminished reading of the NVRA in comparison with other Circuit Courts is *Pub. Int. Legal Found. v. Sec'y of Pa.*, 136 F.4th 456, 461 (3d Cir. 2025), where the Court itself disclaimed ruling beyond standing: "Because we conclude that PILF lacks standing, we need not reach the merits of the District Court's ruling." *Id.*

disagree, and even suggest state statutes could appear consistent with *one* of the NVRA's objectives but "nonetheless create an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Bellows*, 92 F.4th at 55.

"[I]t is not [the court's] province to strike the proper balance between transparency and voter privacy." *Id.* (cleaned up). "Instead, such function is well within the legislative sphere of Congress, which has already determined that without the transparency afforded by public disclosure, public confidence in the essential workings of democracy will suffer." *Id.* "It is not [the court's] call to revisit the careful balance struck by Congress in weighing the privacy risks posed by public disclosure against the interests favoring the same." *Id.*

Plaintiffs' characterization of *Bellows* completely misses its significance.[5] Requiring access to the state voter list was neither its only nor its most relevant holding. The decision *also* struck down a state law making it a crime to "[c]ause the voter information or any part of the voter information that identifies, or that could be used with other information to identify, a specific voter, including but not limited to a voter's name, *residence address or street address*, to be made accessible by the general public on the Internet." *Bellows*, 92 F.4th at 54 (emphasis added) (citing Me. Rev. Stat. Ann. tit. 21-A, § 196-A(1)(J)(2)). Maine's statute was found "inconsistent

---

[5] Dkt. No. 71 at PageID1542 ("In *Bellows*, the First Circuit ruled on an appeal from the…District of Maine, in which the plaintiff alleged that Maine's then-Secretary of State violated Section 8(i)(1) of the NVRA by denying access to the State's voter file.").

with the structure and purpose of the NVRA as a whole." *Id.* (cleaned up) (quoting *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992). So too is Daniel's Law, at least as applied to VRF's NVRA-related transparency efforts.

Courts across the United States agree that the NVRA preempts contrary state laws. *Bellows*, 92 F.4th at 56 ("Because Exception J's Use Ban and Publication Ban are preempted by the NVRA, the fines stemming from violations of such restrictions… are necessarily preempted by the NVRA as well."); *Sullivan v. Summers*, 769 F. Supp. 3d 455 (D. Md. 2025) ("as a matter of law… the Use Restriction in COMAR 33.03.02.01.B(3) presents an obstacle to accomplishing and executing the purposes and objectives of the NVRA and is, therefore, preempted."); *Pub. Int. Legal Found., Inc. v. Knapp*, 749 F. Supp. 3d 563, 572 (D.S.C. 2024) ("Because South Carolina's statutes prevent compliance with the plain language mandates of the NVRA, they are preempted."); *Torrez*, 727 F. Supp. 3d at 1234 ("…the NVRA's Public Inspection Provision preempts both the Use Restrictions and the Data Sharing Ban…"). Daniel's Law would be the exception.

Plaintiffs' arguments about the NVRA "applying to the state and not VRF" miss their mark.[6] Plaintiffs concede that "the NVRA makes it clear that the State… bears responsibility for maintaining and disclosing voter registration records."[7] VRF

---

[6] *See discussion in* Dkt. No. 71, Part I.A.2 at PageID 1514–1544.
[7] Dkt. No. 71 at PageID 1541.

agrees. New Jersey cannot accomplish through private litigants what New Jersey itself cannot do under the NVRA. By criminalizing and imposing massive fines on the disclosure of information that must be made public under federal law, Daniel's Law functions as a blanket prohibition on the publication of tens of thousands of voter registration addresses—a substantial portion of New Jersey's registered electorate. Those addresses are necessary to fulfill the NVRA's election integrity and list maintenance functions, as they are *the* primary data points necessary to verify a voter's eligibility to vote in New Jersey elections.

As Plaintiffs attempt to apply it to VRF's activities, Daniel's Law stands as an obstacle to the accomplishment of the full purposes of the NVRA and is preempted to the extent of that conflict.

### B. **Plaintiffs' remaining arguments are irrelevant to preemption analysis**

Plaintiffs' remaining arguments resisting NVRA preemption are a series of *whataboutisms* that are not relevant to the resolution of this dispute.

For example, their analogy to New Jersey's Address Confidentiality Program to save Daniel's Law is misplaced. First, the ACP statute is not at issue, nor does VRF argue that it is preempted. Second, the ACP statute is far less transgressive of Congressional purposes under the NVRA because it protects a very narrow category of individuals, not the tens of thousands of current and former law enforcement officers, prosecutors, and family members covered by Daniel's Law. Third (and

relatedly), even a cursory review of N.J. Stat. § 19:31-3.2 shows it is far more narrowly tailored in its effort to protect the voter registration information of victims of domestic violence. For instance, it requires an application and that the applicant have a restraining order, compared with the default mass-redaction dragnet approach in Daniel's Law. And while not relevant to the analysis, other states' ACP statutes typically reflect a similar precision, making them far less likely to serve as an obstacle to Congress' objectives in passing the NVRA.

While courts have discussed redacting "highly sensitive personal information,"[8] those discussions focus on information collected as a result of the registration process that is not necessary to verify a voting record (such as an exact birthdate or Social Security Number) or on highly particularized special circumstances (like a voter's involvement with an investigation). Daniel's Law requires redaction of voter registration information essential to election integrity and list maintenance efforts—the voter's address. Without that data point, it is impossible to know whether a voter is registered and voting in the correct state or district. Congress, well-aware that its edicts would require this information to be made publicly available, *explicitly required* the disclosure of the "names *and addresses* of all persons to whom notices described in subsection (d)(2) are sent…" 52 U.S.C. § 20507(i)(2) (emphasis added).

---

[8] *See, e.g.*, *Bellows*, 92 F.4th at 56 (collecting cases).

Plaintiffs next cite the Freedom of Information Act to support the proposition that "the provision of information has long been subject to"[9] state law limitations. Not only is the Freedom of Information Act not at issue in this case, but FOIA and the NVRA were enacted pursuant to different exercises of Congressional authority. The NVRA was enacted pursuant to the Elections Clause, U.S. Const. art. I, § 4, cl. 1. Elections Clause legislation necessarily displaces state law. *Inter Tribal Council*, 570 U.S. at 14 ("…the power the Elections Clause confers is none other than the power to pre-empt…"). FOIA, on the other hand, applies to access to *federal* records, contains its own exemptions,[10] and has no express or implied preemption provisions.

Plaintiffs next misleadingly cite a footnote in *NCAA v. Christie*, 926 F. Supp. 2d 551, 556 n. 24 (D.N.J. 2013) to argue that "the Privacy Act creates exceptions to generalized NVRA provisions."[11] *Christie* had nothing to do with the NVRA. The footnote cites a lawsuit about whether Tennessee could require a voter to disclose their social security number in order to vote.[12] *Christie*'s reference to the NVRA was merely an example of a federal statute treating states differently. It only discussed the Privacy Act's "grandfather clause" because it was enacted prior to the NVRA.

---

[9] Dkt. No. 71 at 1539.
[10] *Id.* at PageID 1539 (citing exemptions in 5 U.S.C. § 552 (b)(1)–(9)).
[11] *Id.* at PageID 1539.
[12] *McKay v. Thompson*, 226 F.3d 752, 755 (6th Cir. 2000).

Daniel's Law, enacted after the NVRA, cannot be "grandfathered in" to legitimacy because state laws that obstruct federal laws are preempted.

Finally, Plaintiffs cite onerous laws from California, Hawaii, Maryland, and Minnesota—none of which are at issue here. Notably, Minnesota is exempt from the NVRA (unlike New Jersey).[13] These arguments should be ignored for the distractions that they are. Plaintiffs may not like and may disagree with Congress' decision, but that is an issue they should take up with Congress—not the courts or the New Jersey Legislature.[14]

## II.    DANIEL'S LAW IS TOO RESTRICTIVE TO SURVIVE VRF'S AS-APPLIED CHALLENGE

It is true that "the conflict between free speech and privacy rights must be decided on a case-by case basis." *Kratovil v. City of New Brunswick*, No. 089427, 2025 WL 1689346, at *24 (N.J. June 17, 2025). But "the prevailing law of invasion of privacy generally recognizes that the interests in privacy fade when the information involved already appears on the public record." *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 494–95 (1975). Because every such case "must be decided on

---

[13] Dkt. No.71 at PageID 1545.

[14] Plaintiffs claim that any "conflict" here is of Defendants' own making because they chose not to respond to Plaintiffs' non-disclosure requests in violation of N.J.S.A. § 56:8-166.1. Dkt. 71 at PageID 1546. VRF and ROA have conducted an exhaustive search based on the limited information provided by Plaintiffs (i.e., the date of the alleged notices) and have yet to identify a single document or communication that could be construed as a notice or takedown request from Plaintiffs. This case could likely be brought to an expeditious end—one way or the other—if the Court requires Plaintiffs to produce copies of the notices supposedly provided.

its particular facts," when "the home address... of a covered person may be newsworthy and thus of public significance," the remedy "is to challenge Daniel's law as unconstitutional as applied." *Atlas Data Priv. Corp. v. We Inform, LLC*, 758 F. Supp. 3d 322, 336, 337 (D.N.J. 2024).

We now know that New Jersey's Supreme Court considers the voting address of a police commissioner to be "truthful information, lawfully obtained, that addresses a matter of public concern." *Kratovil*, 2025 WL 1689346, at *4 & n.7. But the court in *Kratovil* relied upon distinguishing facts that are not present here: "no civil action had been filed against Kratovil; "no criminal proceedings had been instituted," and the defendants had "taken no action of any kind against Kratovil related to his disclosure of Caputo's address." *Id*. at *5. Importantly, the New Jersey Supreme Court also explained that as a matter of "public record", "[t]he covered person's home address 'shall only be subject to redaction or nondisclosure if a request is submitted to and approved by the Director of the Office of Information Privacy.'" *See Id.* at *9.

Here, although Plaintiffs claim Daniel's law "restricts who can obtain unredacted voter information,"[15] the Complaint fails to allege that any Plaintiff followed any of the steps required under N.S.J.A 47:1B-1 to B-2 to require redaction of the information that Plaintiffs conceded in their pleading was lawfully obtained.

---

[15] Dkt. No.71 at 9.

The "discrete factual context" here is that this is one of over one-hundred such suits, each seeking in excess of twenty million dollars and other penalties that were not sought in *Kratovil*; this case involves a different legal tension intersecting between privacy and the public's right of access; and VRF and ROA are not the "data brokers" who only had "private concerns" that were at issue in *Kratovil*.[16]

Adopting Plaintiffs' argument here would lead to the "highly anomalous" result warned against in *Florida Star* and would permit Atlas (as a dubious assignee) to sanction truthful, political speech regarding information obtained directly from the state. The Supreme Court cautioned that "where the government has made certain information publicly available, it is highly anomalous to sanction persons other than the source of its release."[17] Yet, that is precisely Plaintiffs' goal.

Moreover, Plaintiffs' cited authority also explains that "[o]ne of the costs associated with participation in public affairs is an attendant loss of privacy[,]" *Bartnicki v. Vopper*, 532 U.S. 514, 534 (2001); Dkt No. 71 at 17. Elections are "public affairs of statewide concern." *United States v. Midwest Video Corp.*, 406 U.S. 649, 667, n.26 (1972). New Jersey's Open Records Act (OPRA) exists "to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process." *Brennan v.*

---

[16] *Kratovil*, 2025 WL 1689346, at *7.
[17] *The Fla. Star v. B.J.F.*, 491 U.S. 524, 535 (1989).

*Bergen Cnty. Prosecutor's Off.*, 233 N.J. 330, 343 (2018).[18] With the OPRA, "the Legislature declared it public policy that government records "shall be readily accessible for inspection, copying, or examination by the citizens of this State, with certain exceptions, for the protection of the public interest," and that *any limitation of the right of action accorded by OPRA "shall be construed in favor of the public's right of access." Paff v. Ocean Cnty. Prosecutor's Off.*, 235 N.J. 1, 16–17 (2018) (emphasis added).

Similarly, and significantly, for Plaintiffs, New Jersey county clerks are required to print the list of persons registered in each election district and furnish it to any voter who may apply for a copy. *See* N.J.S.A. 19:31–18.1. "As a result of this statute, the names and addresses of all registered voters are available to the public." *D.C. v. Superintendent of Elections*, 261 N.J. Super. 366, 369 (Law. Div. 1992); *accord Atlas Data Priv. Corp. v. We Inform, LLC*, 758 F. Supp. 3d 322, 338 (D.N.J. 2024) ("In some instances, the availability of home addresses… is necessary for the government and society to function.").

Thus, while "the interest of the State of New Jersey is legitimate and compelling" with regard to adopting Daniel's law, so too is "preventing voter fraud, ensuring public confidence in the integrity of the electoral process, and enabling

---

[18] *See also Burnett v. County of Bergen*, 198 N.J. 408, 414 (2009) (the OPRA "serves the bedrock principle that our government works best when its activities are well-known to the public it serves").

voters to cast their ballots in an orderly fashion, [which] are by the registration requirement of N.J.S.A. 19:31–6.3(b)." *Rutgers Univ. Student Assembly v. Middlesex Cnty. Bd. of Elections*, 446 N.J. Super. 221, 240–41 (App. Div. 2016); *see also* N.J. Stat. Ann. § 19:31-6.4 (requiring street address on voter registration form). New Jersey's courts already know that the "two cases of confirmed voter fraud in recent years, both involve[ed] individuals who attempted to vote from addresses other than their permanent homes," and that to prevent this kind of fraud, "election officials 'have full power and authority to visit and inspect any house, dwelling,' or other accommodation to ensure that the voter actually lives at the address listed on his or her registration form." *Id.* at 239. Through the OPRA and these statutes, VRF has received the same information, lawfully, to promote the same interests, which Daniel's Law attempts to hide.

## III. DISCOVERY IS NOT NEEDED TO DECIDE A LEGAL BURDEN

As a last-ditch effort, Plaintiffs seek discovery despite concurrently arguing that the case should be decided "as a matter of law."[19] Plaintiffs fail to identify what, if anything, they think such discovery will reveal, puzzlingly, cite VRF's quotation *Bellows* as justification,[20] and rely on a case about labeling requirements for sexually explicit materials as their legal authority—a completely different subject from this

---

[19] Dkt. No 71 at 19, 22.
[20] Dkt. No. 71 at 23 (citing Dkt. No. 16-1 at 5); *see also Bellows*, 92 F.4th at 54 ("…the restrictions imposed by the Use Ban *erect an impenetrable barrier*…") (emphasis added)).

case.[21] And even then, since *Mazo*, the Third Circuit, in an election law case, has recognized that a challenge to the authority to impose a factual burden is determined as a matter of law.[22] The Court should refuse this dilatory request.

## IV.    CONCLUSION

VRF lawfully obtains publicly available information that it shares at no cost as political speech. This is protected by the U.S. Constitution and cannot be obstructed because of the NVRA. Plaintiffs' claims must fail as a matter of law, at least with regard to VRF and ROA.

Dated: July 18, 2025                    CONSTANGY, BROOKS, SMITH & PROPHETE LLP

By: */s/ John E. MacDonald*
John E. MacDonald (Attorney ID 011511995)
3120 Princeton Pike, Suite 301
Lawrenceville, NJ 08648
jmacdonald@constangy.com
(609) 357-1183 (tel)
(609) 844-1102 (fax)

David A. Yudelson (*Pro Hac Vice*)
2029 Century Park East, Suite 1100
Los Angeles, CA 90067
dyudelson@constangy.com
(310) 256-3064 (tel)
(424) 465-6630 (fax)

*Attorneys for Defendants Restoration of America,*
*Inc. and Voter Reference Foundation LLC*

---

[21] Dkt. No 71 at 22 (citing *Free Speech Coal., Inc. v. Att'y Gen. U.S.*, 677 F.3d 519 (3d Cir. 2012))
[22] *Mazo v. Way*, 551 F. Supp. 3d 478, 508 fn. 12 (D.N.J. 2021) ("it is appropriate to decide Plaintiffs' claims at the dismissal stage because they do not assert a factual burden (i.e., that it is difficult to obtain consent) but rather a legal burden (i.e., that they have to ask for consent in the first place)"), *aff'd sub nom. Mazo v. New Jersey Sec'y of State,* 54 F.4th 124 (3d Cir. 2022)).

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on July 18, 2025, the foregoing was filed electronically. Notice of this filing will be sent to the below listed attorneys of record by operation of the Court's electronic filing system. The parties may access this filing through the Court's system.

Rajiv D. Parikh, Esq.
Jessica A. Merejo, Esq.
PEM LAW LLP
One Boland Drive, Suite 101
West Orange, NJ 07052
rparikh@pemlawfirm.com
*Attorneys for Plaintiffs*

*/s/ John E. MacDonald, Esq.*
John E. MacDonald, Esq.

16